UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:05CV-P440-H

**TIMOTHY WADE FANCHER**
**LONNIE SHAW**                                                                                                    **PLAINTIFFS**

v.

**KENTUCKY PAROLE BOARD,** *et al.*                                                        **DEFENDANTS**

**MEMORANDUM OPINION**

The plaintiffs filed this civil rights action *pro se* under 42 U.S.C. § 1983 ("§ 1983"), and their complaint is before the court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the court will dismiss their action.

**I. SUMMARY OF CLAIMS**

The plaintiffs, Timothy Fancher and Lonnie Shaw, are inmates confined at the Kentucky State Reformatory. The crux of their complaint arises from what they deem unconstitutional treatment by the Kentucky Parole Board when it considered and denied parole for each of them. They initiated this civil rights action against the Kentucky Parole Board and the following parole board members: Robert Milburn, Jeanette Massey, Verman R. Winburn, M. Douglas Gibson, Patricia Combs, and Neil O. Glass (hereinafter referred to as the "Parole Board").

**Plaintiff Fancher's background**

In 1993, the Metcalfe Circuit Court charged Fancher with murder. He was ultimately convicted and given a life sentence. On January 6, 2005, Plaintiff Fancher met with the Parole Board for the first time (DN 1, Compl., p. 7). It deferred parole for 144 months on the basis of the seriousness of the crime which involved violence; that a life was taken; that the crime

involved firearms/deadly weapon or dangerous instrument; and that Fancher had misdemeanor convictions (DN 1, Attach. 5, p. 10).[1]  The Parole Board's decision was also based upon Fancher's history of drug and alcohol involvement and poor institutional adjustment.[2]  *Id.*  It made one recommendation, that Fancher receive a substance abuse evaluation.  *Id.*  He complains he had previously sought such an evaluation but was denied.  He further complains that the Parole Board denied him an opportunity to make a statement or be heard, introduce evidence, or present documents (e.g., GED certificate, college course work certificates, and NA/AA certificates) to show that he has tried to rehabilitate himself.[3]

In response to Fancher's appeal, the decision to deny parole was affirmed.  In a letter to Fancher, the Executive Director of the Parole Board stated:

> . . . Mr. Fancher, you are obviously laboring under a misapprehension.  That being if you had received a Substance abuse class you would have received parole.
> Nothing could be further from the truth.  The facts are you were on a mission to obtain marijuana and after a discussion with the victim you shot him in the head and killed him.  The Board considered these facts and the testimony of

---

[1]According to the transcript of his Parole Board hearing that *Fancher* provided, the Parole Board and he discussed his multiple convictions in the 1980s, to wit, a 1980 conviction for escape, a 1983 conviction for receiving stolen property, 1984 convictions for DUI and leaving the scene of an accident, 1986 convictions for possession of marijuana and public intoxication, a 1988 conviction for criminal trespass, 1990 convictions for a second DUI and possession of prescription drugs in improper container, and 1991 convictions for alcohol intoxication and terroristic threatening (DN 1, Compl., p. 16).

[2]According to Fancher's transcript, the Parole Board noted that some of his institutional write-ups were for smoking in restricted areas while others involved more serious incidents: fighting with an inmate in 1996, possessing a "shank" (a handmade knife) in 1998, fighting with another inmate in 2000, testing positive for codeine in 2001, and possessing marijuana in 2002 (DN 1, Compl., pp. 16-18).

[3]According to Fancher's transcript, he was able to introduce the facts (not necessarily documentary evidence) that he completed his GED and participates in NA and AA (DN 1, Compl., pp. 14 and 16).

>the victim's family. Yes, you are correct, their concerns are addressed. You state you want to be released so you can be with your children and family. I believe your victim had the same thoughts. The Parole Board made a very considered, deliberate decision, a correct decision, and it will stand.

(DN 1, Attach. 10, p. 4, Letter from James W. O'Keefe to Fancher (May 24, 2005)).

**Plaintiff Shaw's background**

In 1971, Plaintiff Shaw was convicted and given a life sentence for murdering his ex-wife's uncle (DN 1, Mem., p. 2). In 1979, he was paroled, but his parole was revoked for a 6-month period due to his drinking. *Id.* He was released again only to be reincarcerated following a DUI conviction. *Id.* In 1984 he was paroled a third time and remained on parole until his 1992 arrest for assault. Following his conviction for assault, he was sentenced to a 15-year term of imprisonment.

In June of 1999, the Parole Board gave Plaintiff Shaw a 60-month deferment on the basis of the seriousness of the crime which involved violence; a life was taken; the crime involved a firearm/weapon (viz., a knife); that Shaw had felony convictions and a misdemeanor record; he had a history of drug and/or alcohol abuse and assaultive behavior; and that he violated conditions of parole and committed crimes while on parole (DN 1, Attach. 4, p. 9). The Parole Board suggested that he become or continue involvement in NA and AA, complete his GED, and enroll in a Violent Offenders Program. *Id.*[4]

On June 2, 2004, Shaw appeared before the Parole Board again and was given another 40-month deferment on the basis of the seriousness of the crime which involved violence; a life

---

[4]Shaw completed the violent offender treatment program in July of 1999 and attended AA meetings from July 1992 through April 1999 with no unexcused absences (DN 1, Attach. 4, pp. 14 and 16-17. It is unclear whether Mr. Shaw is still involved in a 12-Step program.

was taken; the crime involved firearms/deadly weapon or dangerous instrument; and that Shaw had misdemeanor convictions (DN 1, Attach. 4, p. 2). The Parole Board's decision was also based upon Shaw's history of drug and alcohol involvement, that he previously violated his parole, and that his 1992 conviction occurred while he was on parole. *Id.* The Parole Board suggested that he continue his education and involvement in substance abuse programs. *Id.*

### **Plaintiffs' arguments**

Both plaintiffs complain that the procedures used by the Parole Board violated their rights under the Fifth, Thirteenth, and Fourteenth Amendments of the United States Constitution as well as various sections of the Kentucky Constitution. They argue that they have a protected liberty interest in parole guaranteed by the Fifth and Fourteenth Amendments given that the Commonwealth created the Parole Board to review an inmate's parole eligibility (DN 1, Mem., pp. 7-8). They claim that the Parole Board's use of a "pre-printed page of list of reasons" along with the "many reasons they can use to defer[] us" leads to arbitrary and capricious decisions (DN 1, Compl., p. 10). They claim that they have been deprived of equal protection of the laws. They maintain that the Parole Board's considering the crimes for which they stand convicted when reviewing their parole eligibility unconstitutionally places them in jeopardy twice for the same crime, thus depriving them of their "legitimate claim to parole release" in violation of the Fifth and Thirteenth Amendments to the United States Constitution (DN 1, Mem., p. 8). Finally, they submit that the parole release program lacks fairness because the Parole Board frequently denies parole "because [of] the amorphous perception of public opinion." *Id.* at 5. They seek money damages and a declaration that the procedures used by the Kentucky Parole Board are

unconstitutional. They also seek injunctive relief in the form of an order for the Kentucky Department of Corrections to treat all inmates infected with Hepatitis C.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the complaint

must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### III. ANALYSIS

#### A. Due Process Claims

The plaintiffs claim that they possess a federally protected liberty interest in parole to which due process protections attach. They are mistaken. Though the Supreme Court has recently held that prisoners may bring § 1983 civil rights actions to challenge the procedures used in parole proceedings, *Wilkonson v. Dotson*, — U.S. —, 125 S.Ct. 1242 (2005), prisoners must still set forth a cognizable claim under § 1983 to warrant relief. Thus, the plaintiffs must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988).

The plaintiffs cannot establish a due process violation. Prisoners have no inherent constitutional right to parole. *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholiz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). And the Commonwealth of Kentucky has not created a liberty interest in parole. *See* Ky. Rev. Stat. 439.340(1) ("The board *may* release on parole such persons confined in any adult state penal or correctional institution of Kentucky as are eligible for parole." (emphasis added)); *see also Belcher v. Kentucky Parole Board*, 917 S.W.2d 584, 586 (Ky. App. 1996) (holding that "'[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence . . . . [T]he conviction, with all its procedural safeguards, has

extinguished that liberty right" (citation and internal quotations omitted)). Instead, Kentucky considers parole a "privilege," and granting parole is deemed a "grace or gift" for individuals, whom the Parole Board deems eligible. *Stewart v. Commonwealth*, 153 S.W.3d 789 (Ky. 2005) (citing *Commonwealth v. Polsgrove*, 231 Ky. 750, 22 S.W.2d 126 (1929) and *Lynch v. Wingo*, 425 S.W.2d 573, 574 (Ky. 1968)).

To the extent that the plaintiff claims that the mandatory language of Kentucky's statute created such a liberty interest, they are again mistaken. The U.S. Supreme Court has rejected the notion that mandatory language of a state statute creates a liberty interest entitled to federal due process protections. *See Sandin v. Conner*, 515 U.S. 472, 479-84 (1995). There the Court stated:

> [W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)] and *Meachum* [*v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek* [*v. Jones*, 445 U.S. 480, 493 (1995)] (transfer to mental hospital), and *Washington* [*v. Harper*, 494 U.S. 210, 221-222 (1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 483-84 (footnote omitted). Requiring an inmate to remain incarcerated does not impose an "atypical or significant hardship" of the type contemplated by *Sandin*. Because the plaintiffs have no protected liberty interests in parole, they cannot challenge the procedures used to deny them parole. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

**B. Equal Protection**

The plaintiffs also claim that they were deprived of equal protection of the laws. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike," *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985), with a purpose "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Sioux City Bridge Co. v. Dakota County*, Neb., 260 U.S. 441, 445 (1923).

Typically, a plaintiff brings a challenge under the Equal Protection Clause claiming that he, as members of a protected class, has been subjected to intentional discrimination by state officials. *See, e.g., Jones v. Union County, TN*, 296 F.3d 417, 426 (6th Cir. 2002) (holding that in order to state a claim under the Equal Protection Clause, "Plaintiff must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class.") (citing *Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991)). However, not all equal protection claims are premised on membership in a protected class. *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2000) (holding that "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."). In fact, a plaintiff who merely comprises a class of one may file such a claim which is premised on the allegation that he was treated differently from those similarly

8

situated. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (where the Supreme Court "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

Here, the plaintiffs do not claim membership in a protected nor could they as prisoners are not members of a protected class for equal protection purposes. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Nor have they alleged that they have been treated differently from those similarly situated. Because they failed to establish a cognizable equal protection claim, their claim will be dismissed.

## C. **Double Jeopardy**

Finally, the plaintiffs claim that the Parole Board subjected them to double jeopardy because it considered their underlying crimes when reviewing their eligibility for parole. The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The Double Jeopardy Clause applies to judicial proceedings, not parole proceedings. *Sand v. Bogan*, No. 93-2280, 1994 WL 112862, at *2 (6th Cir. Mar. 31, 1994) (citing *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983)). The plaintiffs are not being subjected to a second punishment or an additional sentence for a crime that has been adjudicated. Rather, the Parole Board is denying them the privilege of early release from a previously imposed punishment.

Therefore, a parole board's considering a defendant's underlying crime when determining parole eligibility does not violate the Double Jeopardy Clause. *Mayrides v. Chaudhry*, No. 01-3369, 43 Fed. Appx. 743 (6th Cir. June 20, 2002); *see also Ellick v. Perez*, 27 Fed. Appx. 489 (Nov. 6, 2001) (holding that "parole determinations are not considered criminal punishment for the purposes of the Double Jeopardy Clause.") (citing *Kell v. United States Parole Comm'n*, 26 F.3d 1016, 1020 (10th Cir. 1994)). Because the plaintiffs failed to state a cognizable double jeopardy claim, it will be dismissed.

## IV. STATE CONSTITUTIONAL CLAIMS

Only the plaintiffs' state law claims remain, and the supplemental jurisdiction statute provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Having dismissed the federal § 1983 claims over which the court has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state law claims. Those claims will be dismissed without prejudice.

The court will enter an order that is consistent with this memorandum opinion.

Date:


cc:     Plaintiffs *pro se*
        Defendants
        4412.002